## BAILEY v. COLTON.

1. Where a creditor receives trust funds from his debtor, in payment on the debt, not knowing of the trust, he is not implicated in his debtor's breach of trust.

2. This court will rarely, if ever, disturb the findings of fact of the Circuit Judge, where they depend upon the credibility of witnesses examined openly before him.

3. Mrs. C. borrowed money from N. on a bond and mortgage, and then lent it to her husband on his note. Afterwards C. made a payment to N. on this bond and credited the amount on the note. This payment was made by C. with trust funds, but neither N. nor Mrs. C. knew this. A year later, after threat of suit by the *cestui que trust*, Mrs. C. gave a second mortgage to N. in part, to indemnify him, if required to refund this payment. *Held*, that Mrs. C. could not be required to refund this money, and that the indemnity given by her to N. did not ratify her husband's misconduct nor enure to the benefit of the *cestui que trust*.

4. Points not raised nor considered on Circuit are not properly before this court for review.

Before WALLACE, J., Union, June, 1885.

The appeal in this case was from the following Circuit decree:

It is not necessary that authorities should be cited in support of the proposition that the payment of trust funds upon the debt of the trustee or of his wife is a breach of trust. Upon the consummation of such an act the sureties upon the bond of the trustee become immediately liable. The person to whom the payment is made is also immediately liable for the amount so received, if he was aware that the sum so paid him was paid in trust funds. If, however, the payee received in good faith, without notice, and the money itself cannot be identified, no right of action exists against him. 1 *Perry Trusts*, § 346; *Hudnal* v. *Miller*, 4 McCord, 300. Now, as matter of fact, did Nicholson know or have reasonable grounds of belief that the money paid him by Colton was trust funds? It will be remembered that it was in January, 1884, that Nicholson went with Thomas Bailey to Colton. There is nothing to show that any of the subsequent steps in the matter of the appointment of the guardian was known to Nicholson, or

that he knew when Colton received his ward's money. Colton was in active business as a merchant, supposed to be handling more or less money every day, and it was past the middle of April, three months after the interview between Bailey, Colton, and Nicholson, before Colton paid Nicholson the eight hundred dollars. Although Colton was all the time insolvent, there is no sufficient proof to show in opposition to Nicholson's testimony that Nicholson knew of his, Colton's, insolvency. Colton testifies that he did not tell Nicholson that the money he paid him was trust funds, and Nicholson testifies that Colton did not tell him, and he did not know it. I therefore find that Nicholson did not know that seven hundred dollars of the sum paid by Colton was trust funds, and that he, therefore, is not a *party* to the breach of trust and not liable in this action.

There can be no doubt that seven hundred dollars of the money paid to Nicholson was funds of Mary R. Bailey. The facts show it and Colton admits it. Mrs. Colton was also made aware of it, and agrees to save Nicholson harmless from any liability in consequence of it. She thus, after being aware of the facts, accepts the benefit of the payment of trust funds by her husband upon her debt, and by indemnifying Nicholson assumes the burden of defending the transaction. John E. Colton paid the money on his wife's debt. The payment of the debt was an obligation upon her. To the extent of the payment he discharged her obligation; he, therefore, did act and assumed to act for her. When the matter is afterwards brought to her attention by Nicholson, she accepts the advantage of the payment and claims to hold it. A manifested intention, with knowledge of the circumstances to accept and retain the benefits of an act by any one for whom the act was done, is a ratification of the act, whether previously authorized or not, and makes the actor agent of the person who ratifies. *Story Agency,* §§ 252, 253, *et seq.*

It is obvious, therefore, that the execution of the second mortgage to Nicholson by Mrs. Colton and the stipulation entered upon it in regard to the repayment by Mrs. Colton of the money paid to Nicholson by John E. Colton was a ratification of the payment, which had the effect to make John E. Colton the agent of Mrs. Colton in the transaction. Such a ratification not only

created the agency, but had the same effect as an original authority to bind the principal in regard to third persons. "An act done by an agent which would, if authorized, give an action for damages to a third person against the principal, will, if subsequently ratified by the principal, give the same right to damages against him, as much so as if the action was *founded on a ratified contract of the agent.* In short, it is treated throughout as if the act was originally authorized; for the ratification relates back to the time of the inception of the transaction and has a complete retroactive efficacy. * * Hence it is that if the agent has made a contract without authority from his principal or beyond his authority, and it is afterwards ratified, the principal may generally sue and be sued thereon, in the same manner and with the same effect as if he had originally given the authority." *Story Agency,* §§ 244, *et seq.*

It thus appears from the law and the facts that John E. Colton was in effect acting by the direction and authority of his wife, Mrs. R. W. Colton, when he paid the money to Nicholson for her. The legal effect of the transactions taken together is, that John E. Colton committed a breach of trust by the direction of his principal, Mrs. R. W. Colton, of which Mrs. Colton received the benefit. This state of facts makes Mrs. Colton liable for the repayment of the money. At page 472 of Story's Agency, the following language occurs: "If the principal should direct his agent to commit a trespass, or *to make a conversion of the property of a third person,* or he should subsequently ratify or adopt the act, when done for his own use or benefit, he would be liable as an original trespasser or wrong-doer."

It is therefore ordered and adjudged, that John E. Colton do account for his actings and doings as guardian of Mary R. Bailey, and for any sums received by him and not properly paid out as such guardian, and for all sums properly chargeable against him as such guardian, the plaintiff is entitled to judgment against John E. Colton and his sureties, A. D. Spears and Joshua C. Spears.

It is further ordered and adjudged, that for the sums for which the plaintiff is entitled to judgment, as above adjudged, John E. Colton is primarily liable as between him and his sureties, and

that the plaintiff do have judgment against Rosalie W. Colton for the sum of seven hundred dollars and interest thereon from April 18, 1885, and that for this sum Mrs. Colton is primarily liable, as between her and the sureties upon the guardianship bond of John E. Colton, and for the payment of this sum so much of the bond and mortgage executed by Mrs. Colton to W. A. Nicholson on 5th February, 1885, shall stand as security, and the plaintiff here shall have all such rights in regard to said security necessary to enforce her right under it.

It is further ordered and adjudged, that as to W. A. Nicholson the complaint be dismissed.

*Mr. William Munro,* for plaintiff.

*Mr. J. H. Rion,* for Mrs. Colton and Nicholson.

July 19, 1886.   The opinion of the court was delivered by .

MR. JUSTICE MCIVER.   The defendant, Mrs. Rosalie W. Colton, being indebted to her co-defendant, Nicholson, for money borrowed by her and loaned to her husband, John E. Colton, another defendant, on his own note, to assist him in carrying on his mercantile business, on May 1, 1883, executed her bond to Nicholson in the sum of nineteen hundred and thirty-five dollars, and to secure the payment thereof gave him a mortgage on her house and lot, which was her separate property. On January 15, 1884, John E. Colton was appointed guardian of the plaintiff, and on that day executed his bond, with the other two defendants, A. D. Spears and J. C. Spears, as his sureties, for the faithful performance of his duties as such guardian. On April 15, 1884, John E. Colton received about two thousand dollars, proceeds of a policy of insurance on the life of plaintiff's deceased father, to which the plaintiff and her mother were entitled in equal portions, and on the same day deposited the whole amount received in the bank at Union to his individual credit, which, after the application by the bank of about three hundred dollars to previous overdrafts of John E. Colton, left about seventeen hundred dollars to his credit.   On April 18, 1884, John E. Colton drew from the bank on a check payable to himself or bearer, seven hundred dollars in

currency, which, after adding thereto one hundred dollars taken out of his store, he paid to Nicholson on the bond of his wife hereinbefore referred to, and at the same time took credit on his note to his wife for the amount, to wit: the sum of eight hundred dollars.

On February 5, 1885, Nicholson having heard a rumor that an effort would be made to require him to refund the amount thus paid to him on the bond of Mrs. Colton by her husband, upon the ground that he had used his ward's funds in making such payment, and John E. Colton in the meantime, to wit: on January 29, 1885, having failed and made an assignment for the benefit of his creditors, he (Nicholson) obtained from Mrs. Colton a new bond for the balance due upon the old bond, and also covering three hundred dollars which Nicholson had loaned to Colton in December, 1884, with the additional sum of eight hundred and ninety-five dollars, being the sum, with interest, paid by Colton to Nicholson on the original bond of his wife, which last mentioned bond was secured by a mortgage of the same property. Thereupon the first bond and mortgage seem to have been marked satisfied. At the time the last bond was given it was understood between Mrs. Colton and Nicholson that this sum of eight hundred and ninety-five dollars was to be paid by Mrs. Colton only upon the contingency that Nicholson should be required to refund the money paid him by Colton with his ward's funds, and this understanding was evidenced by an endorsement on said bond to that effect.

On April 15, 1885, this action was commenced, wherein judgment was demanded that an account be taken of Colton's guardianship; that plaintiff have judgment against defendants for the balance found due her upon such accounting; and that the mortgages hereinbefore mentioned be set up and declared securities for plaintiff's benefit.

The case was heard by Judge Wallace, who found that there was a breach of trust upon the part of the guardian in applying seven hundred dollars of his ward's funds in the payment made by him on the bond; that Nicholson, however, was not privy to such breach of trust, as there was no sufficient proof that he knew of Colton's insolvency at the time, or that he knew the money

paid him constituted any part of the ward's estate; that Colton in making the payment was acting as the agent of his wife, and although she may not have known at the time of the payment that the ward's funds were used for the purpose, yet this fact being known to her agent, whose act she subsequently ratified and accepted the benefit of, made her a participant in the original breach of trust by her husband and agent. He therefore rendered judgment that John E. Colton do account as guardian, and that the plaintiff have judgment against him and the defendants who are his sureties for the balance found due to the plaintiff upon such accounting; that as between him and his sureties, John E. Colton is primarily liable; "and that the plaintiff do have judgment against Rosalie W. Colton for the sum of seven hundred dollars and interest thereon from April 18, 1884, and that for this sum Mrs. Colton is primarily liable, as between her and the sureties upon the guardianship bond of John E. Colton, and for the payment of this sum so much of the bond and mortgage executed by Mrs. Colton to W. A. Nicholson on February 5, 1885, shall stand as security, and the plaintiff here shall have all such rights in regard to said security necessary to enforce her rights under it." He further adjudged that as to W. A. Nicholson the complaint be dismissed.

From this judgment the plaintiff and the defendant, J. C. Spears, who makes common cause with her (the defendant, A. D. Spears, who seems to have been insolvent, having died pending the trial), appeal upon the ground of error in dismissing the complaint as against the defendant, Nicholson; and Mrs. Rosalie W. Colton appeals upon the ground of error in fixing any liability upon her. The several grounds of appeal are set out in the record, but need not be repeated here, as we do not propose to consider them *seriatim*, but rather to determime the several questions which we understand these several grounds to raise.

The appeal on the part of the plaintiff and the defendant, Spears, raises a question of fact only ; for unless some notice is brought home to Nicholson that Colton was using trust funds in making the payment to him, it is quite clear that Nicholson cannot be implicated in Colton's breach of trust. According to the well settled rule the finding of the Circuit Judge cannot be disturbed,

unless it is without any evidence to sustain it, or is manifestly against the weight of the evidence. So far from this being the case, we think the conclusion reached by the Circuit Judge may well be supported by the testimony. It is true that there is some testimony tending to show that Nicholson knew that Colton was using the funds of his ward in making the payment, but it seems to us that the preponderance of the evidence is the other way. The testimony tending to show knowledge on the part of Nicholson is not very clear and distinct, while, on the other hand, the testimony of Nicholson and John E. Colton, if credited, conclusively shows a want of knowledge on the part of Nicholson, and, as we have said in several cases, where there is a conflict of testimony, and the result depends upon the credibility of the witnesses, this court will very rarely, if ever, disturb the conclusion reached by a Circuit Judge.

The appeal on the part of Mrs. Colton raises the following questions: 1st. Did the Circuit Judge err in holding that the facts in evidence showed that John E. Colton, when he made the payment to Nicholson, was acting as the agent of his wife, and that her subsequent ratification of this act of her agent, and adoption of the benefit of it, constitute her a participant in the breach of trust which he then committed, and as such responsible for it? 2nd. Can a married woman be made responsible out of her separate estate for a breach of trust committed by her husband? 3rd. Can a married woman, since the amendment to the married women's act, adopted in 1882, execute a valid mortgage to secure the repayment of money borrowed for her husband's use?

It seems to us that the Circuit Judge, in reaching his conclusion as to the liability of Mrs. Colton, overlooked the important fact that these parties stood towards each other not only in the relation of husband and wife, but also in that of debtor and creditor. The fact that she was the wife of John E. Colton does not by any means authorize the inference that she was acquainted with his financial affairs; for all experience shows that the wife is oftentimes wofully ignorant of her husband's pecuniary condition, and knows nothing of his business affairs. And as there is not a particle of evidence in this case that Mrs. Colton knew that her

husband had received any money for his ward, or even knew that he had been appointed guardian, or had any knowledge whatever of the payment to Nicholson until long after it had been made, we think, in considering this question, she should be looked at, not as the wife of Colton, but as his creditor.

Looking at her then in this light solely, what was, practically, the transaction here brought in question? Was it, in effect, anything, more or less, than the payment on a debt due by Colton *to* his wife through Nicholson? And if, as was properly held by the Circuit Judge, the payment made by Colton to Nicholson, even though made with trust funds, would not implicate Nicholson in the breach of trust, without proof that Nicholson knew at the time that the money used in making the payment to him constituted a part of the trust funds, we are unable to see why, upon the same principle, Mrs. Colton should not be relieved from any imputation of participating in the breach of trust, when, as we have seen, she was entirely innocent of any knowledge, at the time ·of the payment, of the character of the funds used in making the payment, or of the source from whence they were derived by Colton.

True, she knew it *afterwards*, and so did Nicholson; but this knowledge, acquired nearly a year after Colton had committed the breach of trust, by using his ward's funds in making the payment, certainly cannot have the effect of implicating either Nicholson or Mrs. Colton in such breach of trust. Suppose that John E. Colton, instead of making the payment directly to Nicholson on his wife's bond, had first paid the money to her on the note which he had previously given *to* her for borrowed money, and she had then sent the money to Nicholson by her husband, or by any third person, to be applied to her bond to Nicholson, could it be pretended, in such a case, that Mrs. Colton could be implicated in the breach of trust committed by her husband, in the absence of any evidence that she knew, at the time, the trust character of the funds she was receiving? Surely not. As soon as the money was thus paid to her it became absolutely hers, to do with as she pleased; and money having no ear marks by which it could be followed, the *cestui que trust* would lose all right to it, and must look for reimbursement to the person alone

to whose guardianship it was committed, and the sureties on his bond. This, it seems to us, was, practically, the real character of the transaction; and the fact that the husband, instead of some indifferent third person, was used as the means of conveying the money to Nicholson, cannot alter the true character of the transaction.

Nor do we see how the subsequent conduct of Mrs. Colton can be regarded as either an adoption or ratification of the previous breach of trust committed by her husband. When, in February, 1885, nearly a year after Colton had committed the breach of trust, his wife for the first time heard, or, so far as the evidence shows, even had reason to suspect, that her husband had thus misapplied the trust funds, what does she do ? She does *not* enter into any agreement or contract to indemnify and save harmless *her husband's ward* against any loss by reason of the misconduct of her husband, but she simply agrees to indemnify *a third person,* Nicholson, against any loss which *he* might sustain by reason of her husband's misconduct. Under the circumstances, this was quite natural, and perhaps commendable, on the part of Mrs. Colton, for it seems that Nicholson had been in the habit of befriending her husband, and that she had previously undertaken to guarantee him against any loss which he might sustain by reason of such friendly acts, by mortgaging her separate property to Nicholson. When, therefore, it was apprehended that Nicholson might become a loser by the improper act of Colton, what more natural than that Mrs. Colton should do as she had done before, step forward and shield the friend of her husband from such apprehended loss? But how this can be regarded as an adoption or ratification of her husband's previous breach of trust, we are unable to perceive. It was simply a contract on the part of Mrs. Colton to indemnify her friend, Nicholson, and how it can be converted into an agreement to indemnify a wholly different person, the plaintiff in this case, with whom there was no privity, we are unable to understand.

The Circuit Judge, in speaking of this branch of the case, and of the conduct of Mrs. Colton in giving the second bond and mortgage to Nicholson, falls into an error, which we regard as fundamental, in using this language: " She thus, after being

aware of the facts, accepts the benefit of the payment of trust funds by her husband upon her debt, and by indemnifying Nicholson assumes the burden of defending the transaction." It is a mistake to say that she accepted the benefit of the payment, "*after being aware of the facts.*" On the contrary, she had not only accepted, but had enjoyed, the benefit of the payment for nearly a year before she had the slightest knowledge of the facts. If she had so chosen, she could, when informed of her husband's breach of trust, have stood out and declined to come to the aid of any of the parties, and in the absence of any evidence whatever of notice to her of the trust character of the funds, she would have been entitled to the full benefit of the payment, as an executed transaction—not executory—which required some act or acquiescence on her part to complete it, and which could not be undone as to her without proof of such notice. On the other hand, if she had so desired, she might have agreed to indemnify the plaintiff against any loss which she might sustain by reason of the misapplication of her funds; or she might have undertaken to indemnify Nicholson against any loss which he might sustain by reason of the improper receipt by him from her husband of trust funds (if such should prove to be the case). She chose to do the latter and *did not* choose to do the former; and we do not see how she can be held liable to the plaintiff, whom she did not agree to indemnify, because she saw fit to indemnify another person, who owes no duty to, and stands in no privity with, the plaintiff.

Under this view of the case, the other questions raised by Mrs. Colton cannot properly arise, and need not, therefore, be considered. Indeed, so far as appears from the "Case," the points raised by those questions do not seem to have been presented to or passed upon by the Circuit Judge, and are, therefore, not properly before us.

The judgment of this court is that the judgment of the Circuit Court, in so far as it adjudges any liability against Mrs. Rosalie W. Colton, be reversed, and that in all other respects it be affirmed.